# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

J.D., JR., by and through his parents,
Jeffery Dixon, Sr., and Amy Dixon;
JEFFERY DIXON, SR.; AMY DIXON;
J.D.; and J.D.          **PLAINTIFFS**

**v.**          **CAUSE NO. 1:11CV514-LG-JMR**

PICAYUNE SCHOOL DISTRICT, CAYNE
STOCKSTILL, J.D.S, M.V.B., N.M., KENT
KIRKLAND, CODY STOGNER, RICHARD
IMHOFF, WALT ESSLINGER,
and JOHN DOES 5-10          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART SCHOOL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion to Dismiss and for Qualified

Immunity [144], the Motion to Strike Sur-reply [162], and the Motion for Summary

Judgment [146] filed by Picayune School District, Cayne Stockstill, Richard Imhoff,

Cody Stogner, Kent Kirkland, and Walt Esslinger (hereinafter collectively referred

to as "the School Defendants"), as well as the Motion to Continue or Deny Motion

for Summary Judgment [155] filed by J.D., Jr., Jeffery Dixon, Sr., Amy Dixon, J.D.,

and J.D. (hereinafter collectively referred to as "the Dixons"). This lawsuit arose

out of the alleged assault of J.D., Jr, committed by Student Defendants J.D.S.,

M.V.B., and N.M. prior to a baseball game. The School Defendants argue that the

Dixons have failed to allege any constitutional violation committed by the School

Defendants and that the Mississippi Tort Claims Act provides them with immunity.

The Dixons have filed a response in opposition to the School Defendants' Motion to

Dismiss as well as a sur-reply, and they filed a motion seeking either a continuance or denial of the summary judgment motion so that additional discovery could be conducted. Upon reviewing the submissions of the parties and the applicable law, the Court finds that the School Defendants are entitled to summary judgment as to all of the Dixons' federal law claims. However, the request for summary judgment is denied as to the state law claims, since the Court declines to exercise jurisdiction over those claims. The Court further finds that the Motion to Strike Sur-reply is moot, since the sur-reply did not affect the Court's decision. The Motion to Continue or Deny Motion for Summary Judgment is denied as to the Dixons' federal law claims.

## FACTS

In their Second Amended Complaint, the Dixons[1] allege that the Picayune Memorial High School baseball team has a history of hazing. They claim that the team regularly participated in a pre-game ritual in which older baseball players would strike younger players in the chest with a closed fist. (2d Am. Compl. at 3, ECF No. 111). The Dixons allege, "The hazing conduct and assaults occurred repeatedly and with actual knowledge of such conduct and assaults by the Picayune School District, Coach Stockstill, Kent Kirkland, Cody Stogner, Richard Imhoff, and Walt Esslinger." (*Id.* at 4).

The Dixons also allege that the team had previously participated in an event

---

[1] The plaintiffs in this lawsuit include Jeffrey Dixon, Sr., his wife Amy Dixon, their minor son J.D., Jr., their minor daughter J.D., and their minor son J.D.

called "whistle day" in which the coaches would leave the field during practice and the upperclassmen would assault the freshmen members of the team, with the coaches' knowledge. (*Id.* at 3-4). The Dixons allege that Picayune's principal, Kent Kirkland, at one time served as head coach of the baseball team, and that all of the current coaching staff – Cayne Stockstill, Cody Stogner, and Richard Imhoff– were players on the team when the whistle day ritual took place. (*Id.*)

On April 19, 2011, the Picayune Memorial High School baseball team was preparing to play a home game against Lumberton High School. (*Id.*) The plaintiff, J.D., Jr., and Student Defendants J.D.S., M.V.B., and N.M. were members of the Picayune team. (*Id.*) Prior to the Lumberton game, the Picayune team gathered on the field as was its custom. (*Id.*) The Dixons claim that M.V.B. identified J.D., Jr, as the player that would be "the victim of the hazing and assault for that night." (*Id.*) They allege that N.M. held J.D., Jr.'s arms behind his back to prevent him from escaping or defending himself. (*Id.*) J.D.S. then struck J.D., Jr., in the chest with a closed fist. (*Id.* at 4-5). The Dixons claim that J.D., Jr., suffered a seizure as a result of being struck. (*Id.* at 5). He fell to the ground and suffered facial trauma and lacerations. (*Id.*)

The Dixons claim that J.D., Jr., "was forced" to be home-schooled for the rest of the school year "[b]ecause of the hostile environment" at the high school, and the following year he "was forced to transfer" to Poplarville High School, where he was not able to pursue advanced studies that had been available at Picayune. (*Id.* at 6). The Dixons assert the following claims against the School Defendants: negligence,

gross negligence, civil conspiracy, negligent supervision, infliction of emotional distress, violation of 42 U.S.C. § 1983, and violation of 42 U.S.C. § 1985. (*Id.* at 6-15). As part of their Section 1983 claim, the Dixons claim the following constitutional violations: substantive due process, equal protection, and the Fourth Amendment. (*Id.* at 12-13). The Dixons also assert the following claims against the Student Defendants: assault and battery, false imprisonment, infliction of emotional distress, and civil conspiracy. (*Id.* at 6-15).

Stockstill, Imhoff, Stogner, Kirkland, and Esslinger have each submitted affidavits in support of their Motion to Dismiss and Motion for Summary Judgment. Stockstill, the current head coach, stated that he had himself been a member of the baseball team from 1991 to 1995 and a member of the coaching staff from 2000 to the present. (Defs.' Mot. to Dismiss, Ex. A, ECF No. 144-1). Imhoff, a current assistant coach, stated that he was a member of the baseball team from 1999 until 2003, and he has been a member of the coaching staff since 2008. (Defs.' Mot. to Dismiss, Ex. B, ECF No. 144-2). Stogner, a current assistant coach, stated that he was a member of the team from 1998 until 2002, and he had been a member of the coaching staff since August 2007. (Defs.' Mot. to Dismiss, Ex. C, ECF No. 144-3). Kirkland, the current principal, stated that he had served as head coach of the team from 1992 until 2004. (Defs.' Mot. to Dismiss, Ex. D, ECF No. 144-4). Esslinger, who is the current Director of Support Services, served as Vice-Principal and Athletic Director from 2007 until 2012. (Defs.' Mot. to Dismiss, Ex. E, ECF No. 144-5).

In their affidavits, each of the officials stated that they had no knowledge of any fighting, punching, pre-game hitting, or rough-housing among the members of the baseball team aside from two incidents – the April 29, 2011 incident in which J.D., Jr., was injured and a January 29, 2011 incident in which one player struck another player in the ribs in the team locker room after practice. After the January 29, 2011 incident, an investigation was conducted, discipline was administered, and the entire team was lectured about the incident and instructed to "keep their hands to themselves." (Defs.' Mot. to Dismiss, Ex. A, ECF No. 144-1). Each official stated that he had no knowledge of the pre-game hitting ritual until the April 29, 2011, incident in which J.D., Jr., was injured. Kirkland and the current coaching staff also denied that the whistle day ritual had ever occurred either while they were players or coaches.

It is undisputed that the whistle day event did not occur while J.D., Jr., and the Student Defendants were on the baseball team. However, the evidence presented to the Court indicates that the pre-game punching ritual occurred on a regular basis while J.D., Jr., and the Student Defendants were members of the team. There is no evidence before the Court that any school official was aware of the pre-game punching ritual prior to the incident in which J.D., Jr., was injured. The evidence indicates that the players were punched while the team was in a tight huddle on the field. (Defs.' Mot. to Dismiss, Ex. L at 7-8, ECF No. 153-6; Defs.' Mot. to Dismiss, Ex. Q at 18, ECF No. 153-11). There is no evidence before the Court that anyone outside of the members of the team ever saw the punching. It is

undisputed that the coaches and J.D., Jr.'s parents were involved in other pre-game activities at the time when the incident occurred.

The only evidence before the Court that conflicts with the affidavits provided by the School Defendants is an affidavit signed by a former player stating that he witnessed a whistle day in 2004. (Pls.' Resp., Ex. 1, ECF No. 156-1). He claimed to know that the whistle day had occurred prior to 2004, but the source of his knowledge is unclear. (*Id.*) Student Defendant, J.D.S., also testified that he was aware of an event that occurred at some time in the past in which a whistle would be blown and then players would wrestle, but he never witnessed it. (Defs.' Mot. to Dismiss, Ex. Q at 17, ECF No. 153-11).

## DISCUSSION

The School Defendants filed a Motion to Dismiss and for Qualified Immunity on the same day that it filed a separate Motion for Summary Judgment. Nevertheless, the School Defendants presented exhibits outside the pleadings to the Court in support of its Motion to Dismiss. The Dixons also provided exhibits outside the pleadings along with their Response in opposition to the Motion to Dismiss. In response to the Motion for Summary Judgment, the Dixons alleged that additional discovery is necessary, and they sought a continuance or denial of that Motion pursuant to Fed. R. Civ. P. 56(d).

In order to survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment." *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998).

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

The Court has reviewed all of the Motions and pleadings filed by the parties, which overlap to some degree. Since the School Defendants and the Dixons have presented evidence outside the pleadings to the Court in support of the Motion to Dismiss, the Court will construe that Motion as a Motion for Summary Judgment. As for the Dixons' Motion to Continue the Motion for Summary Judgment, the Court finds that additional discovery will not assist the Dixons in demonstrating the existence of a genuine issue of material fact as to their federal law claims,

because the Court finds that the School Defendants did not have a constitutional duty to protect J.D., Jr., from private violence. Furthermore, it would be improper for the Court to permit additional discovery as to the Dixons' Section 1983 claims due to the fact that the School Defendants have requested qualified immunity. *See Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). However, the Court finds that the School Defendants' Motion to Dismiss and Motion for Summary Judgment should be denied as to the Dixons' state law claims, so that the parties can conduct additional discovery.

## I. THE DIXONS' FEDERAL LAW CLAIMS

### A. 42 U.S.C. § 1983

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"To state a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012). The Dixons have attempted to assert violations of J.D., Jr.'s right to substantive due process and equal protection, as well as a violation of the Fourth Amendment. "[T]he limited right to state protection from private violence arises out of the substantive

due process component of the Fourteenth Amendment." *Doe v. Covington County Sch. Dist.*, 675 F.3d 849, 853 n.2 (5th Cir. 2012). Therefore, these claims should be analyzed only as substantive due process claims. *See id.*

In their Memorandum in Opposition [157], the Dixons argue that the School Defendants adopted a policy or custom consisting of "tacit approval and passive participation over the past decade in the hazing of freshman baseball players," and this policy or custom led to a violation of J.D., Jr.'s Fourteenth Amendment right to bodily integrity. (Pls.' Mem. at 12, ECF No. 157). They also assert that the School Defendants were deliberately indifferent to J.D., Jr.'s rights, because they failed to stop the hazing.

The Dixons' claims are foreclosed by Fifth Circuit case law. In *Doe v. Covington County School District*, an elementary school adopted a policy in which adults could check students out of school without providing identification. *Doe*, 675 F.3d at 853. The plaintiffs in *Doe* alleged that the school was on notice of the dangers that could exist from the development of this policy, but the school was deliberately indifferent to the dangers posed to students. *Id.* at 865-66. Nine-year-old Jane Doe was checked out of school on five occasions by a man claiming to be Jane's father. *Id.* at 853. On one occasion, he signed Jane out of school by signing her mother's name. *Id.* On each of these six occasions, Jane was sexually assaulted by the man. *Id.* In *Doe*, the Fifth Circuit authored a thorough opinion reaffirming its long-established precedent providing that public schools generally do not have a constitutional duty to ensure that students are safe from private violence. *Id.* at

858.  This general rule applies even when one student injures another student on school grounds.  *See Walton v. Alexander*, 44 F.3d 1297 (5th Cir. 1995).

Nevertheless, a governmental entity may create a special relationship with a citizen that requires the entity to protect that person from private harm.  *Doe*, 675 F.3d at 855-56.  This exception only applies when the governmental entity "takes a person into its custody and holds him there against his will."  *Id.*  The Fifth Circuit has repeatedly held that public schools do not have a special relationship with their students, and thus, schools are not required to protect students from private actors.  *Id.* at 856-58.  Only three groups of individuals have been recognized as having a special relationship with the government: prisoners, persons involuntarily committed to mental institutions, and children in foster care.  *Id.* at 856.

The Dixons argue that the School Defendants have created a special relationship with their students, because the Picayune School District handbook provides:

> Courts have held that teachers and school administrators are "in loco parentis" of students.  This means that teachers and administrators are acting in place of parents during the school day and may do anything a parent would do to maintain discipline.  In addition, school officials must protect all students from possible harm.

(Pl.'s Resp., Ex. 2, ECF No. 157-2).  The Court disagrees.  In *Doe*, the Fifth Circuit explained:

> In the circumstances of incarceration, involuntary institutionalization, and foster care, the state has, through an established set of laws and procedures, rendered the person in its care completely unable to provide for his or her basic needs and it assumes a duty to provide for these needs.  Neither the Supreme Court not this court has ever

suggested that anything less than such a total restriction is sufficient to create a special relationship with the state, regardless of the age or competence of the individual.

*Doe*, 675 F.3d at 859. Despite the in loco parentis status, there is no evidence or argument that the School Defendants did anything to render J.D., Jr., or his parents incapable of providing for his basic needs. Just as in *Doe*, J.D., Jr., was only temporarily in the care and custody of the School Defendants, since he returned home from school each day. *See id.* at 859. He was not required to attend Picayune schools, and he was not required to join the baseball team. *See id.* at 861 (noting that Jane's parents were free to remove her from school if they felt that her safety was compromised). In fact, J.D., Jr.'s parents did remove him from school after the April 2011 incident. The responsibility of providing J.D., Jr., with food, clothing, shelter, medical care, and reasonable safety remained with his parents. *See id.* at 860. As the court in *Doe* stated:

> Although it is true that Jane's guardians were less able to protect Jane during the school day, this fact exists to some extent in every alleged special relationship case involving injuries that occurred at school . . . . This fact has never been found to create a special relationship, as the parents remain the primary caregivers, and the child can turn to his or her parents for help on a daily basis.

*Id.* at 861 n.6.

It also should be noted that the Second Amended Complaint states, "The events at the baseball field occurred in the full view of Plaintiffs Jeffery Dixon, Sr., Amy Dixon, J.D., and J.D., inflicting severed [sic] emotional distress on those Plaintiffs who witnessed the events on the baseball field." (2d Am. Compl. at 5,

ECF No. 111). Therefore, unlike in previous decisions where the Fifth Circuit has refused to recognize a special relationship, J.D., Jr.'s parents were present when he was allegedly assaulted. The Court finds that it is even less likely that a special relationship exists when the student's parents are present when the injury is inflicted by a private actor.[2] For all of these reasons, the Court finds that the special relationship exception does not apply in this case.

The Dixons next argue that the state-created danger exception applies. Many circuits have adopted this exception, holding that state actors can be held liable for harm caused by private actors where the state placed the individual in harm's way. *See Doe*, 675 F.3d at 863-64. The Fifth Circuit has not adopted the state-created danger exception, but it has left open the possibility that it may adopt such an exception at some point in the future. *Id.* at 864-65. The Fifth Circuit has held that a plaintiff wishing to invoke the state-created danger exception would be required to prove "(1) the defendants used their authority to create a dangerous environment for the plaintiff and (2) that the defendants acted with deliberate indifference to the plight of the plaintiff." *Id.* at 865. The deliberate indifference element requires the defendants to create an environment that they know is dangerous. *Id.* The opportunity for a third party to harm the plaintiff must not

_____

[2] The Court is certainly not suggesting that any blame can be placed on the Dixons or that they could have prevented the alleged assault. The Court is merely analyzing, as it is required by law to do, whether the School Defendants prevented the Dixons from caring for their son or restricted their son's liberty. The Court cannot find the existence of a special relationship without such a restriction.

have been available in the absence of the defendants' actions. *Id.* A critical element of this theory is the existence of a known victim. *Id.*

In *Doe*, the Fifth Circuit held that the Does' allegations did not support a claim of state-created danger, even though the school released Jane Doe to a sexual predator on multiple occasions as a result of the school's flawed student check-out policy, because the Does did not allege that the school knew about an immediate danger to Jane's safety. *Id.* at 866.

In an unpublished opinion that was issued several months after the *Doe* opinion, a Fifth Circuit panel once again rejected the state-created danger exception. *See Dixon v. Alcorn Cnty. Sch. Dist.*, No. 12-60515, 2012 WL 6019053 (5th Cir. Dec. 4, 2012). In that case, a student named Ruby Carol was attacked by another student who was known to be prone to violent outbursts. *Id.* at *1. He had previously hit his teacher with a lunch box, slammed the classroom door in another student's face, and kicked another student in the leg. *Id.* He also was known to make threats and use violent imagery. *Id.* On two occasions, he had made statements about Ruby Carol, calling her an enemy and stating that he was glad she was not at school. *Id.* Ruby Carol and her mother sued the school district and several school officials after the troubled student rubbed a Clorox wipe in Ruby Carol's eye, called her profane and rude names, and told her he was washing the germs out of her eyes. *Id.* Ruby Carol suffered an eye injury in the incident. *Id.* The court held that the plaintiffs' allegations were insufficient to assert a state-created danger theory of recovery. *Id.* at *3. The court explained:

> Sad as the facts of this case may be, the record makes clear that Ruby Carol was merely one student among many who faced a generalized risk resulting from the school's attempt to integrate a mentally disabled child into a normal school environment. As our cases illustrate, the state-created danger theory requires a *known victim*, and the fact that a school's policy or procedure presents a risk of harm to students in general is inadequate to satisfy this requirement.

*Id.* The Court also held that the troubled student's two statements expressing his dislike of Ruby Carol did not cause her to become a known victim.

Similarly, in the present case, J.D., Jr., was one of many students who faced a risk of harm due to the school's allegedly inadequate response to hazing. Therefore, he cannot be considered a "known victim" under Fifth Circuit case law, and he would not be able to assert a state-created danger theory of recovery, assuming that this theory were adopted by the Fifth Circuit.

The Dixons also appear to argue that the School Defendants committed a constitutional violation, because their conduct shocks the conscience. This argument is also foreclosed by the *Doe* decision. In *Doe*, the court held that it is insufficient for a plaintiff to demonstrate that the actions of a state actor shock the conscience. *Doe*, 675 F.3d at 868-69. A plaintiff must first demonstrate that the defendant violated a constitutional duty. *Id.* In the present case, J.D., Jr., was injured by a private actor, J.D.S., not the School Defendants. The School Defendants may have had a moral duty and possibly a state law duty to protect J.D., Jr., from J.D.S., but, for the reasons set forth previously, they did not have a constitutional duty to do so.

Finally, the Dixons contend in their Memorandum that the School

Defendants adopted a policy or custom of hazing that was the moving force behind J.D., Jr.'s injury. Assuming for the sake of argument only that the School Defendants had such a policy or custom,[3] the Dixons must allege a constitutional violation in order to have a municipal liability claim against the School Defendants. For the reasons stated previously, they have not done so.

Nevertheless, even if the Dixons had demonstrated the existence of a constitutional duty to protect J.D., Jr., from private violence, it is unlikely that the Dixons could have demonstrated either deliberate indifference or conduct that shocks the conscience. This is perhaps best demonstrated by the Fifth Circuit decision in *Alton v. Texas A&M University*, 168 F.3d 196 (5th Cir. 1999). In *Alton*, a member of a voluntary student military training organization alleged that he was subjected to multiple incidents of hazing and abuse by fellow cadets. *Id.* at 198-99. Alton produced evidence of twenty-eight incidents of misconduct as well as evidence that government officials had been notified that Alton was being subjected to ongoing abuse. *Id.* at 200. The Fifth Circuit found that it could be inferred that the officials had knowledge of the hazing, but the court held that there was insufficient evidence that would have led a reasonable official to believe that Alton's constitutional rights had been violated. *Id.* The court refused to find that the

---

[3] There is no evidence that any of the School Defendants participated in the alleged hazing that injured J.D., Jr. The only evidence that coaches may have participated in hazing is an affidavit stating that a whistle day was held in 2004 and possibly earlier. Even if there were a constitutional violation, it is questionable whether an alleged hazing event that occurred seven years earlier could have been the moving force behind J.D., Jr.'s injuries in 2011.

officials had acted with deliberate indifference since the officials had disciplined the perpetrators and attempted to educate the cadets about hazing. *Id.* at 200-01.

In the present case, there is evidence of two events in which a player was struck by another player, and one of those events was the incident in which J.D., Jr., was injured. There is evidence that discipline was administered after each of these events, and the players were told to keep their hands to themselves. Contrary to the *Alton* decision, the only evidence that the School Defendants were aware of any hazing is an affidavit concerning one whistle day event that occurred seven years earlier. If the misconduct at issue in *Alton* was insufficient to give officials notice of a constitutional violation and was insufficient to amount to a finding of deliberate indifference, that is certainly the case in the present lawsuit.

Since the School Defendants did not violate a constitutional duty, the Dixons do not have a municipal liability claim against the School Defendants. Furthermore, to the extent that the School Defendants were sued in their individual capacities, they are entitled to qualified immunity. *See Doe*, 675 F.3d at 869 (holding that defendant officials were entitled to qualified immunity because the plaintiffs had failed to allege violation of a constitutional right).

**B.  42 U.S.C. § 1985**

The Fifth Circuit has held:

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a

> deprivation of any right or privilege of a citizen of the United States. In doing so, the plaintiff must show that the conspiracy was motivated by a class-based animus.

*Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). The Fifth Circuit has explained, "[A] group consisting of male athletes, male students or all students is not the kind of class that § 1985 requires, unless the students can establish that [the defendant] targeted this group specifically because of some protected common attribute, such as race or, perhaps, gender." *Hagan v. Houston Indep. Sch. Dist.*, 51 F.3d 48, 53 (5th Cir. 1995). This common attribute must consist of an inherited or immutable characteristic such as gender, race, religion, or national origin. *Galloway v. State of La.*, 817 F.2d 1154, 1159 (5th Cir. 1987); *see also Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) (refusing to recognize whistleblowers as a class); *Torres v. Cnty. of Webb*, 150 F. App'x 286, 291 (5th Cir. Sept. 27, 2005) (holding that persons who oppose abortion do not constitute a class under Section 1985).

The Dixons have not asserted any facts or produced any evidence of class-based animus in this case. The Court is unconvinced that freshmen baseball players should be recognized as a class under Section 1985 based on Fifth Circuit precedent. Furthermore, as explained previously, the Dixons cannot demonstrate that J.D., Jr.'s constitutional rights were violated by the School Defendants. As a result, the School Defendants are entitled to summary judgment as to the Dixons' Section 1985 claim.

## C. EQUAL PROTECTION

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. This is essentially a requirement that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

The Dixons' Second Amended Complaint contains the following allegations in support of their equal protection claim:

> 66. [The School Defendants], in allowing, condoning, and participating in the hazing as state actors, have violated Plaintiff's fourteenth amendment right to equal protection.
> 67. The normal policy followed by the Defendants was to punish the actions which led to the injuries suffered by the Plaintiffs. Because those who committed the egregious assault upon Plaintiff were upperclassmen who were vital to the success of the baseball team, they were not punished in accordance with school policy.
> 68. Plaintiff, as an underclass, male, freshman baseball player, was not afforded the same protection as other students who were not subject to the ritual hazing of the baseball team.
> 69. [The School Defendants] discriminated against Plaintiff based upon his age, sex, and participation in school athletics.
> 70. [The School Defendants] discriminated against Plaintiff as they intentionally treated him differently from others similarly situated and there is and was no rational basis for the difference in treatment. Plaintiff is at minimum a "class of one."

(2d Am. Compl. at 12-13, ECF No. 111).

The Dixons' Equal Protection claim is vague, but it appears that they are arguing that the School Defendants should have protected J.D., Jr., from the alleged hazing committed by private actors. As explained previously, the Dixons' claim that J.D., Jr.'s right to bodily integrity was violated is a substantive due process claim, not an equal protection claim. Furthermore, the School Defendants

did not have a constitutional duty to protect J.D., Jr., from private violence.

## D. FOURTH AMENDMENT

The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The Dixons have not alleged that the School Defendants actually seized J.D., Jr., and there is no evidence that they did so. The Dixons allege that N.M., a private actor, seized him. For the reasons stated previously, the School Defendants did not have a constitutional duty to protect J.D., Jr., from N.M. and the Student Defendants. As a result, there is no Fourth Amendment claim stated in the Second Amended Complaint.

## II. THE DIXONS' STATE LAW CLAIMS

District courts may decline to exercise supplemental jurisdiction over state law claims when all claims over which the court had original jurisdiction have been dismissed. 42 U.S.C. § 1367(c)(3). When determining whether to exercise supplemental jurisdiction, the court should consider the following factors: judicial economy, convenience, fairness, and comity. *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).

This case has been pending before the Court since December 2011, but the proceedings have been stayed since March 7, 2013, due to the School Defendants' request for qualified immunity. The Dixons have submitted an affidavit signed by their attorney that states they have not yet had the opportunity to conduct depositions of any of the School Defendants, and the School Defendants have not

responded to all of the Dixons' discovery requests.

The Court, after reviewing the arguments submitted by the parties, would be inclined to hold that the Dixons should be permitted to conduct additional discovery concerning their state law claims against the School Defendants. The Court feels that the state court will be in a better position to determine whether the School Defendants are entitled to immunity after this discovery has been completed. Furthermore, it should be noted that all of the Dixons' claims against the Student Defendants remain pending. Due to the dismissal of the federal claims and the status of the case, the Court will remand the remaining state law claims to the Circuit Court of Pearl River County, Mississippi.

## III. THE SCHOOL DEFENDANTS' MOTION TO STRIKE SUR-REPLY

The Court has reviewed the Dixons' sur-reply, which was filed without first seeking permission from the Court, but the sur-reply did not affect the Court's decision in this matter. Therefore, the Motion to Strike is moot.

## CONCLUSION

For the foregoing reasons, the Court finds that the School Defendants are entitled to summary judgment as to the Dixons' federal law claims. The Dixons' Motion to Continue or Deny Summary Judgment is denied as to their federal law claims. The School Defendants' Motion to Strike Sur-reply is moot. The Dixons' remaining state law claims are remanded back to the Circuit Court of Pearl River County, Mississippi.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion to

Dismiss and for Qualified Immunity [144], which the Court has construed as a Motion for Summary Judgment, and the Motion for Summary Judgment [146] filed by Picayune School District, Cayne Stockstill, Richard Imhoff, Cody Stogner, Kent Kirkland, and Walt Esslinger are **GRANTED** as to the Dixons' federal law claims and **DENIED** as to the Dixons' state law claims. The following claims asserted by the Dixons against the School Defendants are **DISMISSED WITH PREJUDICE**: violation of 42 U.S.C. § 1983, violation of 42 U.S.C. § 1985, the right to substantive due process, the right to equal protection, and the Fourth Amendment.

 **IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion to Strike Sur-reply [162] filed by Picayune School District, Cayne Stockstill, Richard Imhoff, Cody Stogner, Kent Kirkland, and Walt Esslinger is **MOOT**.

 **IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion to Continue or Deny Motion for Summary Judgment [155] filed by J.D., Jr., Jeffery Dixon, Sr., Amy Dixon, J.D., and J.D. is **DENIED** as to the Dixons' federal law claims.

 **IT IS, FURTHER, ORDERED AND ADJUDGED** that this lawsuit is **REMANDED** to the Circuit Court of Pearl River County, Mississippi. A certified copy of this order of remand shall be immediately mailed by the Clerk of this Court to the clerk of the state court pursuant to 28 U.S.C. § 1447(c).

 **SO ORDERED AND ADJUDGED** this the 15th day of May, 2013.

s/ *Louis Guirola, Jr.*
Louis Guirola, Jr.

Chief United States District Judge